The Honorable Marlin D. Freeman, Chair Arkansas State Board of Dispensing Opticians P.O. Box 627 Helena, Arkansas 72342
Dear Mr. Freemen:
This official Attorney General opinion is issued in response to two questions you have presented concerning dispensing opticians.
You have asked:
 (1) Are the definitions of the term "manufacturer" that are used by OSHA and the FDA applicable to A.C.A. § 17-89-201(d)?
 (2) Does the fact that Act 186 of 1997 is silent with regard to employees of optometrists and ophthalmologists mean that such employees cannot perform the services or procedures outlined in Section 1(b) of the Act without violating the Act?
RESPONSE
Question 1 — Are the definitions of the term "manufacturer" that are usedby OSHA and the FDA applicable to A.C.A. § 17-89-201(d)?
It is my opinion that the definitions of the term "manufacturer" that are used by OSHA and the FDA are not applicable to A.C.A. § 17-89-201(d). However, they are applicable for purposes of matters within the jurisdiction of OSHA and the FDA. Therefore, persons in Arkansas who fall within the definitions of the term "manufacturer" that are used by OSHA and the FDA must comply with all OSHA and FDA requirements that are applicable to "manufacturers." However, those same persons are not prohibited from serving on the Board of Dispensing Opticians simply because they fall within the OSHA and FDA definitions of "manufacturer."
A.C.A. § 17-89-201 created the Arkansas Board of Dispensing Opticians. Section (d) of that statute states:
 (d) No person or employee of a person who owns or has direct or indirect financial interest or control of a manufacturer of ophthalmic lenses which are prescribed, delivered, sold, or dispensed in the State of Arkansas shall serve on the board.
A.C.A. § 17-89-201(d) (emphasis added).
The statute does not provide a definition of the term "manufacturer." You indicate that the board has traditionally interpreted the term to refer to large corporate manufacturers of ophthalmic lenses, rather than to individual opticians, optometrists, or ophthalmologists who make lenses from molded blanks or who cut and edge lenses.
You further indicate that OSHA and the FDA, in contrast, have defined the term "manufacturer" to include individuals who purchase unfinished components (i.e., uncut lenses, unstrengthened glass lenses or lenses that will be subjected to further processing such as edging, drilling, grooving, etc.) and who perform the final stages of lens fabrication.
The interpretations of "manufacturer" that were adopted by OSHA and the FDA were formulated for purposes of the implementation of the federal laws, rules, and regulations within OSHA and FDA jurisdiction. See29 U.S.C. §§ 651 et seq.; 21 U.S.C. §§ 371, 393. The term "manufacturer" is used in A.C.A. § 17-89-201(d) for the sole purpose of designating who is permitted to serve on the Arkansas Board of Dispensing Opticians. The state law interpretation of the term "manufacturer" for purposes of determining who may serve on the board is not a matter within OSHA or FDA jurisdiction. That interpretation therefore cannot be preempted by the OSHA and FDA interpretations of the term.
The U.S. Supreme Court has held that the issue of federal preemption is not implicated unless there is a conflict between federal law and state law or policy. See, e.g., Lavidas v. Bradshaw, 512 U.S. 107 (1994). Because, as applied, there is no conflict between the interpretations of the term "manufacturer" for OSHA and FDA purposes, and the interpretation of the term for purposes of the implementation of A.C.A. § 17-89-201(d), I conclude that these federal interpretations do not preempt the board's interpretation of the term for the purpose of determining who is qualified to serve on the board.
Moreover, it is my understanding that the board's traditional interpretation of the term arises out of the fact that when the statutes governing the board of Dispensing Opticians (including A.C.A. §17-89-201(d)) were enacted, the technology that now allows individual practitioners to engage in the performance of the final stages of lens fabrication had not yet been developed. This factor leads me to conclude that the legislature did not intend to include individual practitioners in the meaning of the term "manufacturer," as used in A.C.A. §17-89-201(d). The Arkansas Supreme Court has held that as a guide to ascertaining the legislative intent behind a statute, it is appropriate to examine the history of the statute, as well as contemporaneous conditions at the time of the statute's enactment, the consequences of particular interpretations, and all other matters of common knowledge.Vanderpool v. Fidelity Cas. Ins. Co., 327 Ark. 407, 939 S.W.2d 280
(1997).
For the foregoing reasons, I conclude that the definitions of the term "manufacturer" that are used by OSHA and the FDA are not applicable to A.C.A. § 17-89-201(d).
Question 2 — Does the fact that Act 186 of 1997 is silent with regard toemployees of optometrists and ophthalmologists mean that such employeescannot perform the services or procedures outlined in Section 1(b) of theAct without violating the Act?
It is my opinion that Act 186 of 1997 is not actually silent with regard to employees of optometrists and ophthalmologists, and that it makes specific reference to the acts which such persons can perform.
Act 186 of 1997 amended A.C.A. § 17-90-101 (which governs the practice of optometry) to state:
 (e) Nothing in this chapter shall prevent the performance of those acts, practices and procedures, including the ordering, application and sale of tints or coats for spectacle lenses, by legally qualified persons who are specifically authorized and approved by the Arkansas Ophthalmic Dispensers Act, A.C.A. § 17-89-101, et seq.
Acts 1997, No. 186, § 1.
Thus, Act 186 of 1997 does not prohibit persons who are authorized under the Arkansas Ophthalmic Dispensers Act from performing the acts authorized by the Arkansas Ophthalmic Dispensers Act. Among the persons who are authorized to perform certain acts under the Arkansas Ophthalmic Dispensers Act, are employees of optometrists and ophthalmologists. This authority is stated in A.C.A. § 17-89-103, as follows:
 (b) Nothing in this chapter shall prohibit an employee of an Arkansas licensed optometrist or an Arkansas licensed physician skilled in disease of the eye from performing any of the acts described in § 17-89-102(1) when the acts are performed in the office of an Arkansas licensed optometrist or an Arkansas licensed physician skilled in disease of the eye. The employees are not required to be registered or licensed under the provisions of this chapter.
Thus, the employees of optometrists and physicians are authorized under the Arkansas Ophthalmic Dispensers Act to perform the acts that are set forth and described in A.C.A. § 17-89-102(1), which states:
 (1) "Ophthalmic dispensing" means the preparation of laboratory work orders, verification, and dispensing of spectacle lenses, spectacles, eyeglasses, or parts thereof to the intended wearer on a written prescription from a licensed physician skilled in disease of the eye or from a licensed optometrist.
(A) It shall include:
 (i) The measuring, fitting, adapting, and adjusting of spectacle lenses, spectacles, eyeglasses, or parts thereof to the human face;
 (ii) The preparation and delivery of work orders to laboratory technicians engaged in grinding lenses and fabrication of eyewear;
 (iii) The verification of the quality of finished spectacle lenses, spectacles, or eyeglasses; and
(iv) The adjustment or repair of spectacle frames to the human face.
 (B) The prescribing, adapting, fitting, duplicating, dispensing, modifying, selling, or supplying of contact lenses for or to the human eye is specifically excluded;
A.C.A. § 17-89-102(1).
Accordingly, the employees of optometrists and ophthalmologists are also authorized under Act 186 of 1997, by way of its reference to the Arkansas Ophthalmic Dispensers Act, to perform the above-referenced acts. To the extent that these acts are the same as the acts described in Section 1(b) of Act 186 of 1997, these employees are therefore authorized to perform those acts. The question of whether any of the acts described in Section 1(b) of Act 186 of 1997 are the same as the acts described in A.C.A. §17-89-102(1) is a question of fact upon which I am not qualified to opine. That question is one that can only be answered definitively by a court or through legislative clarification. Until such clarification is rendered, I would recommend scrutiny of the provisions of both statutes and consultation with experts in the field of eye-care.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh